**SKS CONSTRUCTORS, INC., d/b/a/ XL Home Improvements, Plaintiff,**

v.

**Wayne DRINKWINE, Rosemarie Mcloughlin, Priscilla N. Drinkwine, North Harbor Building Corp., Diamond Star Construction, Wachovia Services, Inc., Wachovia Securities, Inc., Wachovia NA, and Wachovia Bank National Association, Defendants.**

No. CV 05–5962.

United States District Court, E.D. New York.

Oct. 6, 2006.

Law Offices of Robert J. Lareddola, P.C., By Robert J. Lareddola, Esq., Garden City, for Plaintiff.

Kestenbaum & Mark, Esqs., By Richard S. Kestenbaum, Esq., Great Neck, for Defendants Wayne Drinkwine, Priscilla Drinkwine, Rosemarie McLoughlin, North Harbor Building Corp., Diamond Star Construction, Inc. and Safeguard Renovation and Construction.

---

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action brought by a home improvement company alleging, *inter alia,* that a former salesman defrauded and converted funds that should have been paid to the Plaintiff company. In addition to naming the salesman, Wayne Drinkwine, as a defendant, Plaintiff names two individuals as defendants, Priscilla Drinkwine and Rosemarie McLoughlin as well as three construction companies alleged to have been associated with these defendants. Also named as defendants (referred to in Plaintiff's complaint as "additional defendants") are three corporate affiliates of Wachovia Bank (referred to collectively as the "Wachovia Defendants").

In addition to setting forth claims of fraud, conversion and tortious interference with contract, Plaintiff alleges federal claims pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"). The factual allegations underlying all claims are the same. The RICO claims are the sole basis for federal jurisdiction.

Presently before the court is a motion, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the RICO claims for failure to state a claim. Also before the court is the motion to dismiss of the Wachovia Defendants. These defendants argue that in the event that the court dismisses the RICO claims, it should decline to exercise jurisdiction over the state law claims asserted against them and dismiss all claims against the Wachovia Defendants. For the reasons that follow, all motions are denied.

## BACKGROUND

### I. *Factual Background*

In light of the fact that this case is presented, at this juncture, as a motion to dismiss, the court will outline here those facts relevant to the motion that are not in dispute and in the light most favorable to Plaintiff, the non-moving party.

### A. *The Parties*

Plaintiff SKS Constructors, Inc., d/b/a/ XL Home Improvements ("XL") is a licensed home improvement contractor doing business in an area that includes this district. Defendant Wayne Drinkwine ("Drinkwine") worked as an independent

contractor salesman for XL for a seventeen month period from March of 2004 until his termination on August 31, 2005. Defendant Rosemarie McLoughlin is alleged to be an individual residing at the same address as Drinkwine. Defendant Priscilla Drinkwine, presumably a relation of Drinkwine, is an individual alleged to reside in the State of Florida. The four named corporate defendants (other than the Wachovia Defendants) are alleged to be located at the same address in Smithtown, New York and under the control of Drinkwine (collectively the "Drinkwine Defendants").

In his capacity as a salesman for the Plaintiff company, Drinkwine was responsible for soliciting home improvement contracting business on behalf of XL. In exchange for his services, Drinkwine was paid a commission based upon the cost of the project. Drinkwine had access to confidential business information including customer names and financial data. While Drinkwine was permitted to pickup customer checks for delivery to XL, he was not authorized to deduct any amount from those checks or to deposit checks and keep the proceeds for himself.

### B. *The Allegations of Wrongdoing*

Drinkwine is alleged to have wrongfully converted funds that should have been paid to XL, for his own benefit and for the benefit of the Drinkwine Defendants. Specifically, Drinkwine is alleged to have wrongfully endorsed checks payable to XL and then deposited those checks in accounts for himself and the other Drinkwine Defendants. It is also alleged that Drinkwine purchased raw materials on credit while never intending to pay for those materials. Credit is alleged to have been fraudulently obtained in the names of Wayne Drinkwine and Priscilla Drinkwine as well as in a fictitious name.

As to dates when the scheme to defraud operated, the complaint sets forth allegations that pre-date the parties' business relationship as well as allegations concerning their seventeen month association. Specific allegations include particular checks wrongfully endorsed and converted during the time in which Plaintiff alleges that Drinkwine acted as a salesperson, and refer to four checks dated in February, May and July of 2005. The complaint also contains allegations that pre-date the date when Drinkwine began to work for XL. Thus, the complaint alleges that the Drinkwine Defendants' fraudulent enterprise has been "ongoing since July 2002." The complaint also sets forth dates upon which credit was allegedly fraudulently obtained to purchase raw materials. Those dates include credit obtained and purchases made from July of 2003 through February of 2004.

### II. *Legal Allegations in the Complaint*

Relying on the allegations set forth above, Plaintiff alleges state law claims for fraud, conversion and tortious interference with contract. Plaintiff's federal claims are alleged pursuant to RICO, 18 U.S.C. §§ 1962(c) and (d).[1] In support of the RICO claims, Plaintiff alleges that the Drinkwine Defendants constitute an enterprise that engaged in a "scheme to defraud payments for construction projects which it did not intend to perform." Similarly, the enterprise is alleged to have fraudulently obtained credit to purchase raw materials for which it never intended to pay. As to specific predicate acts, Plaintiff alleges that defendants acted in violation of

---

1. Plaintiff's allegations concerning the Wachovia Defendants are state law claims and are not relevant to this motion.

the federal mail and wire fraud statutes, 18 U.S.C. § 1341 and 18 U.S.C. §§ 1343.

Although the enterprise is alleged to have been "ongoing since July 2002," and the earliest alleged act of racketeering is stated to have taken place in 2003, Plaintiff's complaint alleges that the predicate acts "are both related and continuous since March 1993, at least." It also is alleged that the "repeated nature of this conduct during the period of the scheme and the threat of similar conduct occurring in the future makes the acts continuous."

### III. *The Motions to Dismiss*

The Drinkwine Defendants move to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The 9(b) motion alleges failure to plead specifically the predicate acts of mail or wire fraud. The 12(b)(6) motion seeks dismissal of the RICO claims on the grounds that Plaintiff's complaint fails to properly allege: (1) the existence of a RICO enterprise and its management or control; (2) a pattern of racketeering activity or (3) a RICO conspiracy. The Wachovia Defendants move, in the event that the court grants the motion to dismiss the RICO claims, to dismiss the state law claims asserted against them.

After outlining the applicable law, the court will consider the merits of the motion.

### DISCUSSION

### I. *Legal Principles*

#### A. *Standard for Motions to Dismiss Pursuant to Rule 12(b)(6)*

A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);

*Weixel v. Board of Educ. of New York*, 287 F.3d 138, 145 (2d Cir.2002). When ruling on a motion to dismiss, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997). It is not for the court to "weigh the evidence that might be presented at trial; the Court must merely determine whether the complaint itself is legally sufficient ..." *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 186 (E.D.N.Y.2000).

#### B. *Standards Pursuant to Rule 9(b)*

Rule 9(b) sets forth additional pleading requirements with respect to allegations of fraud. The reason for these requirements are: (1) to provide the defendant with fair notice of the claims asserted; (2) to protect the defendant from harm to reputation or goodwill as a result of unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *AIU Ins. Co. v. Olmecs Medical Supply Co.*, 2005 WL 3710370 *10 (E.D.N.Y.2005). "[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982); *see Wood v. Village of Patchogue*, 311 F.Supp.2d 344, 351 (E.D.N.Y.2004).

To satisfy the pleading requirements of Rule 9(b), the plaintiff must plead the circumstances of the fraud with particularity and that the defendant acted with fraudulent intent. Fed.R.Civ.P. 9(b). In order to satisfy this requirement, the complaint must: " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and

(4) explain why the statements were fraudulent.' " *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994)(quoting, *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)).

■ Where plaintiff claims that mail and wire fraud took place in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information. *AIU Ins. Co.,* 2005 WL 3710370 *11 (E.D.N.Y.2004); *Wood,* 311 F.Supp.2d at 352; *Calabrese v. CSC Holdings, Inc.,* 283 F.Supp.2d 797, 808 (E.D.N.Y.2003). Rule 9(b) is satisfied so long as the mailings and wire transfers alleged "further an underlying scheme that itself has a fraudulent, deceptive purpose." *Jerome M. Sobel & Co. v. Fleck,* 2003 WL 22839799 at *5 (S.D.N.Y.2003), *report and recommendation adopted,* 2004 WL 48877 (S.D.N.Y. 2004).

■ In cases involving multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud. *See DiVittorio,* 822 F.2d at 1247. However, "it is not necessary to allege ... that the defendants have personally used the mails or wires; it is sufficient that a defendant 'causes' the use of the mails or wires." *Jerome M. Sobel,* 2003 WL 22839799 at *6. The fact that a third party "may have caused the use of the mails does not render the pleading defective, so long as 'the defendants could reasonably have foreseen that the third-party would use the mails in the ordinary course of business as a result of defendants' act." *Id.* (quoting, *United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989)).

### C. Stating a RICO Claim

#### 1. 18 U.S.C. § 1962(c)

■ 18 U.S.C. § 1962(c) ("Section 1962(c)") makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." 18 U.S.C. § 1962(c). To establish a RICO claim pursuant to Section 1962(c), plaintiff must prove "(1) a violation of the RICO statute ... (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 107 (2d Cir.2001); *New York Transportation, Inc. v. Naples Transportation, Inc.,* 116 F.Supp.2d 382, 387 (E.D.N.Y.2000). A violation of Section 1962(c) is properly pled by a showing of: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas,* 244 F.3d 286 306 (2d Cir.2001) (quoting, *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

#### 2. 18 U.S.C. § 1962(d)

18 U.S.C. § 1962(d) ("Section 1962(d)") makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of the RICO statute".

#### 3. Enterprise

■ A RICO "enterprise" is broadly defined in the statute and includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Such an enterprise need not be a formal corporation, group or organization. Instead, the statute is satisfied by a showing of a formal or informal group of persons, "associated for a common purpose

of engaging in a course of conduct" which then functions as a "continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *see United States v. Morales*, 185 F.3d 74, 80 (2d Cir.1999); *AIU Ins. Co.*, 2005 WL 3710370 at *6. Defendants stated to be members of the enterprise must be alleged to engage in "a particular fraudulent course of conduct and work together to achieve" their goal. *AIU Ins. Co.*, 2005 WL 3710370 at *6.

 Plaintiff must also plead that each defendant participated in the "operation or management" of the enterprise. *AIU Ins. Co.*, 2005 WL 3710370 at *8. This requires a showing that each had "some part" in "directing the affairs of the enterprise." *Id.* While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit. *DeFalco*, 244 F.3d at 309.

 The Second Circuit has construed the enterprise element liberally and has held that an enterprise is properly pled even if the pleading reveals that the group exists solely for the commission of the fraudulent acts alleged in the complaint. *Pavlov v. Bank of New York, Co., Inc.*, 25 Fed.Appx. 70, 2002 WL 63576 (2d Cir. 2002); *United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir.1983); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 22 (2d Cir.1983); *AIU Ins. Co.*, 2005 WL 3710370 at *6; *RD Mgmt. Corp. v. Samuels*, 2003 WL 21254076 at *7 (S.D.N.Y.2003). Although the RICO enterprise element must be proven separately from the pattern of racketeering activity, there will often be overlap between the proof offered to show the existence of each of these elements. *Mazzei*, 700 F.2d at 89.

#### 4. *Pattern of Racketeering Activity*

 A "pattern of racketeering activity," requires a showing of at least two related predicate acts of racketeering activity occurring within a ten year period. *See* 18 U.S.C. § 1961(5); *New York Transportation*, 116 F.Supp.2d at 387; *Oak Beverages, Inc. v. Tomra of Massachusetts, LLC*, 96 F.Supp.2d 336, 346 (S.D.N.Y. 2000). Predicate acts of racketeering activity include a variety of federal and state criminal offenses including the federal mail and wire fraud statutes. 18 U.S.C. § 1961(1); *see* 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud). While federal mail and wire fraud constitute RICO predicate acts, common law fraud under state law does not constitute such an act. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir.1999).

 A RICO pattern is established by showing that the predicate acts relied upon are "related, *and* that they amount to or pose a threat of continued criminal activity." *Cofacredit*, 187 F.3d at 242 (quoting, *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original)). When seeking to satisfy the continuity requirement, a plaintiff must show that the defendants' activities were "neither isolated or sporadic." *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995). The element of continuity may be satisfied by a showing of either "open ended continuity" or "closed ended continuity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241–42, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Cofacredit*, 187 F.3d at 242.

#### I. *Open Ended Continuity*

 To establish open ended continuity, it need not be shown that predicate acts were engaged in over an extended

period of time. Instead, plaintiff must show that there was a threat of continuing criminal activity "extending indefinitely into the future." *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. 2893. This threat of continuing criminal activity must extend "beyond the period during which the predicate acts were performed." *De Falco,* 244 F.3d at 323 (quoting, *Cofacredit,* 187 F.3d at 242). The key considerations to the question of open ended continuity are the nature of the enterprise and the predicate acts alleged. *See Cofacredit,* 187 F.3d at 242. If the enterprise alleged is engaged in "inherently unlawful" acts, there is a threat of continuing criminal activity and open ended continuity exists. *Id.*

■ On the other hand, if the enterprise is engaged in a legitimate business, an allegation of open ended continuity requires evidence supporting an inference that the predicate acts are the regular way of doing business, or that the nature of the predicate acts themselves implies a threat of continuing criminal activity. *Id.; see also GICC Capital Corp.,* 67 F.3d at 466; *Allen v. New World Coffee, Inc.,* 2001 WL 293683 at *6 (S.D.N.Y.2001); *Jordan(Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd.,* 154 F.Supp.2d 682, 694–95 (S.D.N.Y.2001).

### ii. *Closed Ended Continuity*

■ A RICO plaintiff may also satisfy the continuity element by a showing of "closed ended" continuity. Closed ended continuity is shown by proving "a series of related predicate acts extending over a substantial period of time." *Cofacredit,* 187 F.3d at 242. When calculating the relevant time period, the court considers only the time during which defendants committed the predicate acts alleged. *De-Falco,* 244 F.3d at 321. Actions that do not constitute predicate acts are not considered when calculating the relevant time

period. *GICC Capital Corp.,* 67 F.3d at 468.

■ The Second Circuit has noted that it has never held a period of less than two years of activity sufficient to satisfy the closed ended continuity requirement. *See De Falco,* 244 F.3d at 321. While closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the "number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes" as relevant when determining whether closed ended continuity exists. *Id.; New York Transportation,* 116 F.Supp.2d at 388.

## II. *Disposition of the Motion to Dismiss the Substantive RICO Counts*

### A. *Rule 9(b)*

■ Defendants seeks dismissal of the RICO claims on the ground that Plaintiff fails to allege the predicate acts of mail and wire fraud with the specificity required under Rule 9(b).

As noted above, where, as here, the predicate acts alleged are violations of the mail and wire fraud statutes, the pleader need only allege that the "mail and wire fraud were in furtherance of a larger scheme to defraud," and "the communications themselves need not have contained false or misleading information." *Calabrese,* 283 F.Supp.2d at 808; *see also In re Sumitomo Copper Litig.,* 995 F.Supp. 451, 456 (S.D.N.Y.1998). Further, where there are multiple defendants, "it is not necessary to allege . . . that the defendants have personally used the mails or wires; it is sufficient that a defendant 'causes' the use of the mails or wires." *Jerome M. Sobel,* 2003 WL 22839799 at *6.

Plaintiff here alleges that the predicate acts of mail and wire fraud were undertaken in furtherance of the scheme to defraud

XL of payments made by its customers. Also alleged are a series of credit card charges made in connection with a scheme to order raw materials with no intention of paying. The amended complaint sets forth, in detail, payments and charges made. Included in the complaint are dates and amounts of checks as well as dates upon which credit is alleged to have been fraudulently obtained. Under these circumstances, the court holds that Rule 9(b) is satisfied and declines to dismiss the complaint pursuant to that rule.

### B. *Rule 12(b)(6)*

The Drinkwine Defendants' Rule 12(b)(6) motion seeks dismissal of the Section 1962(c) claim on the ground that Plaintiff fails to properly allege enterprise and/or a pattern of racketeering activity. Each ground for dismissal is addressed below.

### 1. *Enterprise*

The enterprise alleged by Plaintiff is the statutory "group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4). The group is alleged to have existed since "at least 2003" and consists of the named individual and corporate defendants. This enterprise is alleged to have existed for the purpose of allowing Defendants to engage in "sham" construction projects which it had no intention of completing and to conceal the unlawful conversion of funds from XL.

Given the liberal pleading standard in this circuit, as detailed above, the court concludes that Plaintiff has adequately alleged, at least at this early stage, an association in fact, consisting of the Drinkwine Defendants and that of these each defendants participated in the conduct and control of the enterprise. *See AIU Ins. Co.,* 2005 WL 3710370 at * 6; *RD Mgmt. Corp.,* 2003 WL 21254076 at * 5 (When pleading

enterprise element of RICO claim, plaintiff need comply only with the notice pleading set forth in Rule 8 of the Federal Rules of Civil Procedure). While Plaintiff will be required, ultimately, to prove that each member of the enterprise had a part in directing its affairs, the court holds that the allegations of the complaint are sufficient to survive a motion to dismiss.

### 2. *Pattern of Racketeering Activity*

A "pattern of racketeering activity," requires a showing of at least two related predicate acts that were "neither isolated or sporadic" are therefore amount to or pose a threat of continued criminal activity. *Cofacredit,* 187 F.3d at 242. As noted, pleading this element is satisfied by a showing of either "closed ended continuity" or "open-ended continuity." *H.J., Inc.,* 492 U.S. at 239, 109 S.Ct. 2893; *Cofacredit,* 187 F.3d at 242.

To satisfy the continuity requirement, Plaintiff alleges that it was defrauded during the period of association with Drinkwine, *i.e.,* March 2004 through August 2005. All allegations pre-dating this period of time relate to assertions of defrauding other, unnamed homeowners. While it is alleged that the Drinkwine Defendants were engaged in the home improvement business, which is, on its face, a legitimate business, it is alleged that the illegal operation set forth in the complaint was the regular way in which the business was conducted. It is against this factual backdrop that the court turns to consider whether Plaintiff has alleged adequately continuity.

### I. *Open Ended Continuity*

As noted, open ended continuity exists even if the predicate acts were not engaged in over an extended period of time. Instead, there must be a threat of continuing criminal activity "extending indefinitely

into the future." *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. Where defendants are engaged in a legitimate business, open ended continuity can exist if the predicate acts are the regular way in which the enterprise conducts its business. *Id.; see also GICC Capital Corp.*, 67 F.3d at 466; *Allen v. New World Coffee, Inc.*, 2001 WL 293683 at *6 (S.D.N.Y.2001); *Jordan(Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd.*, 154 F. Supp.2d 682, 694–95 (S.D.N.Y.2001).

Here, although the Drinkwine Defendants are engaged in the home improvement business, a business that is not criminal in nature, it is alleged that the predicate acts are the only way in which the business operated. While this may prove to be a difficult fact to establish at trial, it is sufficient to establish open ended continuity for the purpose of this motion to dismiss.

### ii. *Closed Ended Continuity*

The court also holds that Plaintiff has properly alleged closed-ended continuity. With respect to the Plaintiff company, there is alleged only a seventeen month period of association with Drinkwine. Both the complaint and the papers submitted in response to the motion however, refer to a broader scheme. Thus, the complaint refers not only to the defrauding of the Plaintiff company, but to a larger scheme to defraud homeowners. The means employed by Defendants with respect to Plaintiff and other homeowners is the same. It is alleged that the Drinkwine Defendants were, and continue to be, engaged in a scheme defrauding homeowners by obtaining and receiving payment on home improvement contracts while never intending to complete any project.

While Drinkwine's seventeen month period of employment by Plaintiff may be insufficient, standing alone, to establish closed-ended continuity, consideration of "the number of victims and separate incidents," *DeFalco*, 244 F.3d at 321, leads the court to conclude that closed-ended continuity is properly pled. Defendants argue that the involvement of non-party victims cannot be alleged in support of the continuity element because Plaintiff lacks standing to pursue claims on behalf of others. While Plaintiff may not be able to collect damages with respect to the injuries of other, unnamed parties, it does not necessarily follow that Plaintiff may not allege injury to others in support of allegations of an ongoing fraudulent scheme, or pattern of racketeering activity. As noted by the court in *Wells Fargo Century, Inc. v. Hanakis*, 2005 WL 1523788 (E.D.N.Y.2005), if only those acts involving the named plaintiff could be considered when determining the continuity of any scheme, "then schemes could remain in force, provided the orchestrators changed targets prior to the actual accrual of a 'substantial' period of time." *Wells Fargo Century, Inc. v. Hanakis*, 2005 WL 1523788 * 5 (E.D.N.Y.2005); *see also First Interregional Advisors Corp. v. Wolff*, 956 F.Supp. 480, 486 (S.D.N.Y.1997) (closed-ended continuity established where plaintiff alleged similar schemes to defraud non-named parties). This court agrees that allegations of essentially the same scheme perpetrated on unnamed parties may be alleged to support a claim of closed-ended continuity. The court notes that Plaintiff will be required to prove the existence of the scheme alleged at trial. That scheme, however, has been pled sufficiently to survive this motion to dismiss.

### C. *Section 1962(d)*

To state a Section 1962(d) RICO conspiracy claim, a plaintiff must allege a substantive RICO violation. *Cofacredit*, 187 F.3d at 244–45; *Allen*, 2001 WL

293683 at \*9 (S.D.N.Y.2001). Because the court holds that Plaintiff has properly alleged a RICO claim, the court denies the motion to dismiss the conspiracy claim.

III. *Motion of the Wachovia Defendants*

The Wachovia Defendants' motion to dismiss sought dismissal of all claims asserted, in the event that the court dismissed the RICO claims. In view of the fact that the court has declined to dismiss those claims, the motion of the Wachovia Defendants is denied.

### CONCLUSION

For the foregoing reasons, all pending motions to dismiss are denied. The Clerk of the Court is directed to terminate those motions. The Court is aware that the Wachovia Defendants will be moving, before Magistrate Judge Wall, to amend the third party complaint. After a decision is rendered on that motion the parties are directed to contact the court to schedule a pre-motion conference, if necessary, regarding a motion to dismiss the third party complaint.

SO ORDERED.